**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| JEREMIAH W WALLER,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN TEKETA JESTER, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 5:26-cv-230-CAR-AGH |

## RECOMMENDATION OF DISMISSAL

*Pro se* Plaintiff Jeremiah W. Waller, an inmate in the Baldwin State Prison in Hardwick, Georgia, filed a complaint seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff also filed a motion seeking leave to proceed *in forma pauperis* (IFP) in this case (ECF No. 2). For the following reasons, Plaintiff's IFP motion is **GRANTED**, but it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice**.

## MOTION TO PROCEED IFP

Plaintiff first seeks leave to proceed without prepayment of the filing fee pursuant to 28 U.S.C. § 1915(a). IFP Mot., ECF No. 2. Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action. *Id.* His motion to proceed IFP (ECF No. 2) is **GRANTED.**

However, a prisoner allowed to proceed IFP must still pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the

court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. IFP Mot., ECF No. 2. Accordingly, it is **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I. Directions to Plaintiff's Custodian

Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The Clerk of Court shall send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act (PLRA), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00

has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II. Plaintiff's Obligations on Release from Custody

Plaintiff's release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he fails to comply with the provisions of the PLRA.

# PRELIMINARY SCREENING OF PLAINTIFF'S COMPLAINT

## I. Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply here, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e) (2)

("[T]he court shall dismiss the case at any time if the court [finds] the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). A Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* A claim can be dismissed as malicious if it is knowingly duplicative or amounts to an abuse of the judicial process. *See Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it fails to include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States, and (2) the act or omission was

committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing 42 U.S.C. § 1983) ("Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claims, the complaint may be dismissed. *See Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of claims at preliminary screening since prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II. Factual Allegations

Plaintiff's claims arise from an incident that occurred at Baldwin State Prison (BSP) on February 11, 2026. Compl. 5, ECF No. 1. On that date, Plaintiff contends another inmate named Keyshawn Allen attacked Plaintiff in his dorm. *Id.* Plaintiff suffered a significant stab wound to his leg, and he was hospitalized for five days. *Id.* Plaintiff contends that his dorm was not properly secured and the security cameras in the area were not working. *Id.* Plaintiff returned to BSP from the hospital on February 16, 2026, and he gave a statement to Lieutenant Green about the incident. *Id.*[1] Plaintiff contends "security" placed Plaintiff "back in I-building dorm 2," even though Allen was "in I-building dorm 1[.]" *Id.* Plaintiff contends Allen remained in I-building with Plaintiff for approximately one week, until prison officials transferred

[1] Plaintiff does not name Lieutenant Green as a Defendant. Compl. 1, 4, ECF No. 1.

Allen to a transitional center. *Id.* Plaintiff also contends the incident was not properly investigated and that Allen was never criminally charged. *Id.* Plaintiff names as Defendants BSP deputy warden of security, Rodney Gardner; deputy warden of care and treatment, Jeffery Farmer; and warden Teketa Jester. *Id.* at 4. Plaintiff contends these Defendants' actions and inactions violated his constitutional rights, and thus he seeks monetary damages and "want[s] Keyshawn Allen charged with [a]ggravated [a]ssault with serious injuries[.]" *Id.* at 6.

## III. Plaintiff's Claims

### A. *Deliberate Indifference to Safety*

Plaintiff first suggests that Defendants were deliberately indifferent to his safety. Prison officials generally have a duty under the Eighth Amendment to protect the inmates under their care from harm inflicted by other inmates. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, it is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Id.* at 828. To state a claim for deliberate indifference to an inmate's safety, a prisoner must allege facts to show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (citation omitted). The prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019). There are two ways for an inmate to make this showing. *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). First, an inmate may proceed on a "particularized threat" theory by attempting to show "that [he] was the target of a specific threat or danger." *Id.* Second, the inmate may proceed on a "dangerous conditions" theory, which requires the inmate to "demonstrate that the prison conditions [he] was subjected to were so dangerous that they resulted in cruel and unusual punishment." *Id.* Under either theory, the inmate must face "a 'strong likelihood' of injury, 'rather than a mere possibility[.]'" *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quotations and citation omitted).

To demonstrate deliberate indifference, a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer*, 511 U.S. at 839). The subjective component requires that the prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Marbury*, 936 F.3d at 1234 (alteration in

original). The prison official must possess "more than a generalized awareness of risk" to the prisoner. *Id.*

Plaintiff first fails to allege facts sufficient to state a dangerous conditions claim. To prevail under a dangerous conditions theory, Plaintiff would have to show that "serious inmate-on-inmate violence was so pervasive that it constitute[d] a substantial risk of serious harm." *Marbury*, 936 F.3d at 1234. He could also point to "specific features of the jail that render it particularly violent." *Dickinson v. Cochran*, 833 F. App'x 268, 275 (11th Cir. 2020) (holding plaintiff who "alleged overcrowding, failure to identify and segregate violent inmates, failure to properly search inmates, failure to limit contraband, and failure to adequately supervise inmates" that led to inmate-on-inmate violence could state deliberate indifference claim). These features, however, must still cause the conditions in the prison to be "extreme." *Mountain v. Dozier*, No. 5:20-CV-406 (MTT), 2021 WL 3642031, at *3-4 (M.D. Ga. Aug. 17, 2021) (citations omitted).

Plaintiff's description of a single incident of inmate-on-inmate violence is not sufficient to support a claim under a dangerous conditions theory. *Compare Marbury v. Warden*, 936 F.3d at 1234-35 (allegations that plaintiff witnessed 15 assaults over unspecified period of time were not sufficient to establish plaintiff "was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm") *with Marbury v. Warden III*, 180 F.4th 1349, 1358 (11th Cir. 2026) (evidence of 200 assaults in two years was sufficient to "establish a genuine factual dispute as to whether [plaintiff] faced a substantial risk

of serious harm" in prison where he was attacked). And while Plaintiff points to specific features of the prison that could render it particularly violent—i.e., that the dorms were not secured and the cameras were not working at the time of the attack—these allegations fail to show that the conditions were sufficiently extreme to state a claim under a dangerous conditions theory. Plaintiff does not allege that any named Defendant knew that the locks or cameras were not working, nor does he allege that this was a common occurrence. Absent such facts, Plaintiff "has not said enough to plausibly allege a substantial risk of serious harm" because "[t]he extant risk, as alleged, [i]s no more than possible, not substantial." *See Brooks v. Warden*, 800 F.3d 1295, 1302 (11th Cir. 2015) (holding that plaintiff failed to allege substantial risk of serious harm where he was attacked after all cell doors malfunctioned and opened, allowing inmate who had previously threatened plaintiff to attack him).

To meet the subjective standard under a particularized threat theory, an inmate must similarly establish that he provided prison officials with enough details about a specific threat to show "that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." *Marbury v. Warden*, 936 F.3d at 1237. This standard does not require an inmate "to identify the person who was threatening him by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that he faced a substantial risk of serious harm." *Id.* (citations omitted). The objective component requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that

he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Id.* at 1233 (quoting *Rodriguez*, 508 F.3d at 620). Because Plaintiff has alleged that multiple defendants acted with deliberate indifference, he must explain what each Defendant knew with respect to the alleged danger he faced. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted) (holding that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference," and therefore "[e]ach individual Defendant must be judged separately and on the basis of what that person knows"). In addition, "the essential timeframe under analysis is restricted to the time period <u>before</u> the injury has occurred, when the official had knowledge of the substantial risk of harm, but chose to act unreasonably." *Estate of Owens*, 660 F. App'x at 768 (emphasis in original).

In this case, Plaintiff has not alleged any facts that could show that any named Defendant knew that Allen posed a particular danger to Plaintiff prior to the assault. *See, e.g., Daniels v. Felton*, 823 F. App'x 787, 790 (11th Cir. 2020) (holding that prison officials were not deliberately indifferent to plaintiff's safety where plaintiff "did not identify any risk of harm known to the defendants beyond the generalized danger of housing rival gang members in the same prison," "did not know the inmates who attacked him," "did not have any prior problems with" the inmates who attacked him, and "did not present evidence of any specific prior conflict between his cellmate and the attackers"); *see also Estate of Owens*, 660 F. App'x at 770 (finding summary judgment appropriate as to defendant where "[n]othing in the record even remotely suggest[ed] that [defendant] had any belief, suspicion, knowledge, or inclination that

[inmate] would attack [plaintiff] when he did"). And, while Plaintiff alleges he was placed back in the same building as Allen after the incident, he does not allege that any named Defendant was responsible for this placement. Compl. 5, ECF No. 1. It is also notable that Plaintiff was not placed in the same dorm as Allen, even if the two inmates were in the same building. *See Id.* (noting Plaintiff was placed in "I-building dorm 2" and Allen remained in "I-building dorm 1"). Indeed, Plaintiff does not allege he had any contact with Allen or that Allen posed a threat to him after the initial attack despite his placement in the same building. In short, there is simply nothing in the Complaint that could show any named Defendant had subjective knowledge of a substantial risk to Plaintiff. Plaintiff's claims that Defendants were deliberately indifferent to his safety must therefore be dismissed without prejudice.

*B. Failure to Investigate or Prosecute*

Plaintiff also suggests Defendants failed to properly investigate the incident or punish Allen, and he wants Allen to be criminally charged for assaulting him. Compl. 5-6, ECF No. 1. This Court does not have authority to order state or federal law enforcement agencies or prosecutors to initiate investigations or prosecutions. *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Plaintiff, a private citizen, likewise has no power to originate criminal pleadings on his own initiative. *Id.* Similarly, a claim that prison officials failed to press charges against an inmate does not amount to a constitutional claim. *See, e.g., Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) ("The decision to file or not file criminal charges falls within [the] category of acts that will not give rise to section 1983 liability."). Plaintiff also has no

constitutional right to have his claims more thoroughly investigated. *See, e.g.*, *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (finding there is no constitutional right to an investigation of an excessive force claim); *Mallory v. Hetzel*, No. 2:12-CV-1011-WHA, 2016 WL 5030469, at *14 (M.D. Ala. Aug. 26, 2016) (finding that "[f]ailing to investigate an inmate's complaint properly does not rise to the level of a separate constitutional violation" because "[i]nmates simply do not enjoy a constitutional right to an investigation of any kind by government officials"), *report and recommendation adopted,* No. 2:12-CV-1011-WHA, 2016 WL 5109153 (M.D. Ala. Sept. 19, 2016). Therefore, to the extent Plaintiff attempts to raise constitutional claims based on any Defendant's alleged failure to investigate or prosecute Allen, these claims must likewise be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed IFP (ECF No. 2) is **GRANTED**, but it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable C. Ashley Royal, Senior United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to

the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 4th day of November, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE